680 So.2d 1154 (1996)
Huey J. RIVET, et al.
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 96-C-0145.
Supreme Court of Louisiana.
September 5, 1996.
Rehearing Denied October 25, 1996.
*1155 Ronald J. Bertrand, Bertrand & Soileau, Rayne, for Applicants.
Leon C. Vial, III, Hahnville, Ralph R. Miller, Norco, for Respondent.
KIMBALL, Justice.[*]

ISSUE
We granted the State of Louisiana, Department of Transportation and Development ("DOTD")'s writ in this inverse condemnation suit to determine: (1) whether landowners in a proposed subdivision whose land has suffered a decrease in value due to DOTD's denial of a permit for driveway access from the proposed subdivision to a public highway may recover damages for streets and greenways previously dedicated to a Parish and/or for lots within the tract acquired after the date of DOTD's denial of the permit; and (2) whether attorney fees in the amount of 25% and expert fees in the amount of $15,000.00 per expert were properly awarded to plaintiff landowners. However, because our examination of the record in this matter shows that the court of appeal's initial decision reversing the trial court's judgment awarding damages for the dedicated streets and greenways and for lots not owned by anyone party to the instant suit at the time of DOTD's denial of the permit is a final judgment in part on the merits, we hold the trial court on remand did not have the power or authority to award damages for the dedicated streets and greenways or for any lots acquired by plaintiff landowners after the denial of the permit.
We therefore do not reach the merits of the first issue which prompted us to grant this writ. Instead, we vacate the decisions of the trial court on remand and the court of appeal on appeal after remand, and remand the matter to the trial court to adjust the damages award in accordance with the court of appeal's final judgment by making specific factual findings as to the total amount of acreage of the tract, the amount of acreage occupied by the streets and greenways and the 29 lots not owned by anyone party to the suit at the time of DOTD's denial of the permit and, using its original damage award of $3,099,264.00, to calculate the damages awarded on a per acre basis, deducting the value of the acreage occupied by the streets and greenways and the 29 lots from the original damage award.
We further hold that, given the specific language of La. R.S. 13:5111, the statutory authorization for an award of attorney fees in an appropriation or inverse condemnation suit, the trial court erred both in awarding attorney fees absent record evidence as to the amount of attorney fees actually incurred by plaintiffs' attorneys and in awarding attorney fees as a percentage of the judgment amount. We therefore also remand for a hearing to allow plaintiff landowners to introduce evidence as to their attorney fees actually incurred and for the trial court to thereafter assess and fix the attorney fees award by determining an actual dollar amount to be awarded in accordance with La. R.S. 13:5111.

FACTS AND PROCEDURAL HISTORY
On August 10, 1973, V.I.P. Corporation ("V.I.P.") purchased a large tract of land in St. Charles Parish, measuring approximately 110 acres[1], from Bar None, Inc. for $400,000.00. *1156 This tract of land, which bordered on Highway 61 (Airline Highway) near existing residential subdivisions, was purchased by V.I.P. for development of a new residential subdivision. Pursuant to these intentions, V.I.P. filed a subdivision plat with the Parish of St. Charles and, on December 17, 1973, formally dedicated the lands necessary for streets and greenways in the proposed subdivision to the Parish. St. Charles Parish accepted the dedication, which consisted of approximately 30 acres out of the 110 acre tract, and the dedication remains in effect today. The remainder of the tract, consisting of approximately 80 acres, was then subdivided by V.I.P. into lots to be sold.
Subsequent to the dedication of the streets and greenways and the filing of the subdivision plat, V.I.P. sold lots in the proposed subdivision to various persons, including shareholders of V.I.P., though no construction of the infrastructure of the subdivision had yet begun. In 1975, V.I.P. sold most of the remaining lots to St. Charles Land & Development Company. The stock of St. Charles Land & Development Company was subsequently transferred to Huey Rivet and his wholly owned corporation, Rivet Dragline & Marsh Buggy Company, Inc. (for convenience, Huey Rivet and Rivet Dragline & Marsh Buggy, Inc. will hereinafter be referred to as "Rivet").
On May 2, 1985, after a lengthy series of delays, Rivet finally obtained a wetlands permit from the U.S. Army Corps of Engineers, allowing him to commence certain infrastructure construction on the tract.[2] Rivet then filed an application for a driveway permit with DOTD on May 7, 1985, requesting access to Airline Highway from the tract. By letter dated July 8, 1985, DOTD denied Rivet's request for driveway access to Airline Highway due to the intended construction by the state of an interchange at Airline Highway and 1-310 in the future.[3] After DOTD's denial of the driveway permit, but before he filed suit against DOTD for appropriation of the tract through denial of a driveway access permit, Rivet acquired ownership of an additional 28 lots in the tract. Rivet then filed suit against DOTD on October 9, 1987. While the suit was pending, several other persons who owned lots in the tract intervened.
After trial on the merits, the trial court found an appropriation had occurred by virtue of DOTD's denial of a permit for driveway access from the tract onto Airline Highway and rendered judgment in favor of Rivet and the intervenors in the amount of $3,099,264.00, plus interest from date of judicial demand, attorney's fees of 25%, and expert fees of $15,000.00 for each of plaintiffs' appraisers. On appeal by DOTD, the fifth circuit court of appeal affirmed the trial court's determination that an appropriation had occurred, and further found no error in the trial court's assessment of damages on a per acre basis. However, the court of appeal set aside the total amount of compensation awarded, finding that the trial court had erred in awarding compensation for the acreage occupied by the dedicated streets and greenways and in awarding compensation for 29 lots owned by persons not parties to the suit.[4]Rivet v. State, DOTD, 93-369 (La.App. 5th Cir. 3/16/94), 635 So.2d 295, writ denied, 94-1606 (La.11/29/94), 646 So.2d 397 ("Rivet I"). The court of appeal therefore remanded the matter to the trial court to redetermine the total amount of damages to be awarded, after deducting the acreage occupied by the dedicated streets and greenways and the 29 lots not owned by persons party to the suit, and to "assess and fix on *1157 the revised award the amount it considers to be `reasonable engineering, appraisal and attorney fees actually incurred' as required by LSA-R.S. 13:5111 et seq." Rivet I, 93-369 at 12, 635 So.2d at 301. Though DOTD filed a writ application in this court challenging the court of appeal's decision that a "taking" had occurred as well as its affirmance of the trial court's valuation of the lands in the tract, the writ was denied. See Rivet v. State, DOTD, 94-1606 (La.11/29/94), 646 So.2d 397. Plaintiff landowners, however, failed to file a writ application in this court challenging the court of appeal's determination that the trial court had manifestly erred in awarding damages to plaintiffs for the decrease in value to the lands occupied by the dedicated streets and greenways and the 29 lots not owned by anyone party to the suit.
On remand, the trial court ignored the court of appeal's finding of error concerning the award for acreage occupied by the streets and greenways, as well as its instructions that the award be reduced by the value of that acreage. In addition, though the record contained a stipulation showing Rivet did not own any of the 29 lots at issue on the date of DOTD's denial of the permit and the court of appeal had accordingly found that the trial court erred in awarding plaintiff landowners damages for the value of the 29 lots and ordered the trial court on remand to reduce the award by the value of those 29 lots, the trial court accepted evidence on remand which showed that Rivet had acquired 28 of the 29 lots at issue after DOTD's denial of the permit for driveway access but prior to the filing of the instant suit. On the basis of this evidence, the trial court reduced the award by the value of the one lot not owned by anyone party to the suit at either the time of DOTD's denial of the permit or at the time of the filing of the suit, i.e., the trial court reduced the award by $7,946.83.[5] Subject to this amendment, the trial court maintained its original judgment, including the expert fees award and the attorney fees award of 25%.
On appeal of the amended judgment by DOTD, a different panel of the fifth circuit court of appeal, in an opinion "Not Designated For Publication," affirmed the trial court's amended judgment despite the trial court's failure to award damages in accordance with the original court of appeal's decision. Rivet, Et Al. v. State of Louisiana, Department of Transp. & Develop., 95-0784 (La.App. 5th Cir. 12/13/95), 665 So.2d 187 ("Rivet II"). The court of appeal, ignoring, as did the trial court, the decision of the original panel of the same court of appeal that a deduction from the award must be made for the lands occupied by the streets and greenways, held that as the dedicated lands have no commercial value to the Parish the diminution in value to those lands must inure to the adjoining landowners such that an award for the value of the dedicated lands to the adjoining landowners was proper despite the fact that the adjoining landowners do not own the dedicated streets and greenways. Rivet II, 95-0784 at 4-5. Further, the court of appeal, without addressing the issue of whether the proper parties to recover damages for the decrease in the value of lands within the tract are the owners of such lands at the time of the denial of the permit or the owners of such lands at the time of the filing of suit (where, as in the instant case, such parties are different), affirmed the trial court's award of damages to Rivet for the reduction in value of the 28 lots Rivet had acquired after DOTD's denial of the driveway access permit.[6]Id. at 3. Finally, *1158 finding no abuse of discretion in the trial court's decision, the court of appeal affirmed the attorney fees award of 25% and the award of expert fees. Thereafter, we granted DOTD's writ in this matter to review the correctness of the court of appeal's decision. Rivet, Et Al. v. State of Louisiana, Department of Transp. & Develop., 96-0145 (La.3/15/96), 668 So.2d 1149.

DISCUSSION

The Streets and Greenways and the 28 Lots
On appeal from the initial trial court decision, the court of appeal determined that "[o]n December 17, 1973, V.I.P. dedicated the streets and greenways. St. Charles Parish accepted the dedication of the streets and greenways and this dedication remains in effect today." Rivet I, 93-369 at 1, 635 So.2d at 296 (emphasis added). The court further found merit in DOTD's contention that the trial court "included the value of 29 lots owned by persons who were not parties to this suit in assessing the value of the property." Id., 93-369 at 12, 635 So.2d at 301. On the basis of these determinations, the court of appeal held:
From the testimony, it is clear that Oubre (and Guice) [the plaintiff's expert appraisers] included all the property, including the lots owned by persons not in this suit ("foreign lots"), and land dedicated to the parish, in estimating the loss of value to plaintiffs. We find that the trial court, in accepting this evaluation, should have reduced the award to plaintiffs by the value of the "foreign lots" and the previous dedicated property and not to do so was manifest error.
Id. (emphasis in original). The court of appeal therefore affirmed the trial court's determination that a "taking" had occurred, as well as its valuation of the land taken, but vacated and set aside the damages awarded to plaintiffs, remanding the matter to the trial court "for a determination of the amount of damages suffered by plaintiffs as outlined above, consistent with this opinion." Id. Though DOTD filed a writ application in this court challenging the court of appeal's affirmance of the trial court's determination that a compensable "taking" or damaging of plaintiffs' property had occurred as well as the court of appeal's affirmance of the trial court's assessment of damages as to the remainder of the property, plaintiffs herein did not file a writ application in this court challenging the court of appeal's determination that the trial court had manifestly erred in awarding damages to plaintiffs for the decrease in value to the lands occupied by the dedicated streets and greenways or the "foreign lots." Therefore, when DOTD's writ application was denied by this court, see Rivet, Et Al. v. State of Louisiana, Department of Transp. & Develop., 94-1606 (La.11/29/94), 646 So.2d 397, the decision of the court of appeal became a final judgment on the merits as to these issues:
When a court renders a judgment that decides the merits of the case in whole or in part, the judgment is a final judgment. La. Code Civ.Proc. art. 1841. A final judgment may be rendered by either a trial court or an appellate court, and a judgment by an appellate court that decides the merits of the case is a final judgment, regardless of whether the case reached the appellate court on appeal or on supervisory writs.
A final judgment is conclusive between the parties except on direct review. La. Rev.Stat. 13:4231. Moreover, a final judgment acquires the authority of a thing adjudged if no further review is sought within the time fixed by law or if the judgment is confirmed on further review. La.Civ.Code art. 3056(31). Once a final judgment acquires the authority of the thing adjudged, no court has jurisdiction, in the sense of power and authority, to modify, revise or reverse the judgment, regardless of the magnitude of the error in the final judgment.
Tolis v. Board of Supervisors of Louisiana State University, 95-1529 (La.10/16/95), 660 So.2d 1206.
Just as the initial court of appeal panel's determination that a "taking" had occurred or damages had been sustained by plaintiff *1159 landowners due to DOTD's denial of a driveway permit is a judgment that decides the merits of the case in part, so too is the determination by that court that plaintiff landowners had no right to recover damages for either the decrease in value to lands within the tract which had been dedicated to the Parish or the 29 "foreign lots." When the initial court of appeal panel issued its decision, plaintiff landowners, DOTD, or both, had the right to apply for writs in this court and contest the judgment of the court of appeal. DOTD did so, and its application was denied. Plaintiff landowners, however, failed to file an application in this court contesting the court of appeal's decision. Consequently, the court of appeal's decision became a final judgment in part on the merits. As such, on remand the trial court did not have discretion to disregard the court of appeal's instructions that the damage award be redetermined consistent with the court of appeal's opinion, i.e., that the damages be determined by deleting any award for either the lands occupied by the dedicated streets and greenways or by the 29 "foreign lots."
Furthermore, because the original court of appeal decision in this matter is a final judgment, the second court of appeal panel, on appeal of the trial court's amended judgment after remand, also lacked the discretion to ignore the original court of appeal panel's judgment or the trial court's failure to follow the original panel's decision and instructions. Instead, on appeal after remand, the court of appeal should have, if it were able to do so from the record, amended the trial court's judgment to conform with the original court of appeal decision. See, e.g., Lasha v. Olin Corp., 625 So.2d 1002,1006 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 n. 2 (La.1989); McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986); Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980); Gonzales v. Xerox, 320 So.2d 163, 165 (La.1975).
Our review of the record, however, reveals that the court of appeal on appeal after remand would not have been able to properly amend the judgment to conform with the original court of appeal decision, as the record contains conflicting testimony and evidence as to the total acreage of the tract, the acreage occupied by the streets and greenways, and the acreage contained in the 29 "foreign lots," and the trial court failed to make factual findings as to any of these issues, instead simply awarding plaintiff landowners $3,091,318.17 in its amended judgment. For these same reasons, we too are unable to make the proper deductions from the damage award to delete the awards for the streets and greenways and the 29 "foreign lots." We therefore remand the matter to the trial court to determine the total acreage of the tract, the acreage occupied by the dedicated streets and greenways, and the acreage contained in the 29 lots not owned by plaintiff landowners or the intervenors at the time of DOTD's denial of the permit. The trial court is further instructed to then determine, using the total acreage of the tract and its original damage award of $3,099,264.00, the value, on a per acre basis, of the lands contained in the tract and, consistent with the original court of appeal opinion, the value of the lands occupied by the dedicated streets and greenways and the 29 "foreign lots." The values so determined are then to be deducted from the original judgment amount of $3,099,264.00, and an amended judgment issued accordingly.

Attorney and Expert Fees
The court of appeal on original hearing instructed the trial court to "assess and fix on the revised award the amount it considers to be `reasonable engineering, appraisal and attorney fees actually incurred' as required by LSA-R.S. 13:5111 et seq." Rivet I, 93-369 at 12, 635 So.2d at 301. On remand, plaintiff landowners argued that as DOTD had failed to assign the award of attorney fees as error in the court of appeal and that court had not explicitly found error or abuse of discretion in the attorney fees awarded, instead simply instructing the trial court to adjust the attorney fees award to reflect the reduction in the damage award, the attorney fees award of 25% should be res judicata. After revising the damage award to delete the value of one lot, the trial court noted in its reasons for judgment that it believed the award of attorney fees to be res judicata, but stated "assuming arguendo that it is not, this Court is of the opinion that all fees awarded herein are reasonable." The trial court *1160 again awarded attorney fees in the amount of 25%, citing the "magnitude and type of judgment herein," the fact that "[m]ost cases such as the case at bar are based on a contingency fee," and the fact that this case "started in 1987." The trial court also again awarded expert fees in the amount of $15,000.00 for each expert.
On appeal after remand, the court of appeal strongly implied that it too considered the award of attorney fees res judicata, stating "[o]ur review of the record convinces us that these fee awards were not an abuse of the trial court's discretion even were the percentage of the attorney fees not res judicata. " Rivet II, 95-0784 at 5 (emphasis added). The court of appeal therefore affirmed the trial court's award of attorney fees of 25%, noting that a review of the record demonstrated that the matter is in its eighth year of litigation, on appeal for the second time, involved a complex "takings" problem requiring a high level of competence, and has been pursued on plaintiffs' behalf on a contingency fee basis. Id. at 5-6. The court of appeal also affirmed the trial court's award of expert fees, stating "[w]e have also reviewed the testimony and reports of the two appraisers and deem the fees awarded to these two experts reasonable as well." Id. at 6.
As an initial matter, we do not find the trial court's award of attorney fees in the amount of 25% or its award of expert fees in the amount of $15,000.00 per expert to be res judicata. The court of appeal, on initial hearing, remanded the case in part with instructions for the trial court to delete damages awarded for certain specified lands and to "assess and fix on the revised award the amount it considers to be `reasonable engineering, appraisal and attorney fees actually incurred' as required by LSA-R.S. 13:5111 et seq." Rivet I, 93-369 at 12, 635 So.2d at 301 (emphasis added). When the court of appeal remanded the matter with specific instructions to delete the awards for the dedicated streets and greenways and the 29 lots, which would obviously result in an award approximately one-third less than the amount awarded by the trial court, it clearly intended for the trial court to make a new award of attorney fees and expert fees under La. R.S. 13:5111 et seq., taking into account the significantly reduced amount awarded in the revised judgment. We will therefore review herein the award on remand, as affirmed by the court of appeal after remand, of 25% attorney's fees and expert fees in the amount of $15,000.00 per expert.[7]
Attorney fees are not allowed in Louisiana except where authorized by statute or contract. State, DOTD v. Williamson, 597 So.2d 439, 441 (La.1992). In this inverse condemnation suit, an award of attorney fees is statutorily authorized by La. R.S. 13:5111(A), which states, in pertinent part:
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. (Emphasis added).
In contrast, La. R.S. 19:8, which authorizes an award of attorney fees in an expropriation suit, states, in pertinent part:
If the highest amount offered is less than the compensation awarded, the court may award reasonable attorney fees. (Emphasis added).
*1161 Finally, La. R.S. 48:453(E), which authorizes an award of attorney fees in a "quick-taking" expropriation suit, states:
Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court. (Emphasis added).
La. R.S. 13:5111(A) was originally enacted as La. R.S. 13:5061(B). See 1972 La. Acts 121, § 1. At the time of its enactment in 1972, La. R.S. 13:5061(B) contained the "reasonable attorney fees actually incurred" language in its authorization of awards of attorney fees in appropriation suits. Following the adoption by the People on April 20, 1974, of the Louisiana Constitution of 1974, which, by its own terms (Article XIV, § 35) became effective at midnight on December 31, 1974, the Louisiana Legislature, in an extraordinary session held from October 27, 1974 to November 5, 1974, amended La. R.S. 19:8 and La. R.S. 48:453(E) to include the above quoted authorizations for awards of attorney fees. See 1974 La. Acts, Ex.Sess. 11, § 1 (La. R.S. 19:8); 1974 La. Acts, Ex.Sess. 30, § 1 (La. R.S. 48:453(E)). These Acts specified that they were to take effect on January 1, 1975, the morning after the new Louisiana Constitution of 1974 took effect by its own terms. See 1974 La. Acts, Ex.Sess. 11, § 3 (La. R.S. 19:8); 1974 La. Acts, Ex.Sess. 30, § 2 (La. R.S. 48:453(E)). Thereafter, the legislature amended and reenacted La. R.S. 13:5101-5111 in 1974 La. Acts 434, § 1, redesignating La. R.S. 13:5061(B) as La. R.S. 13:5111(A). Significantly, despite the addition in the previous legislative session of the authorizations for awards of attorney fees in La. R.S. 19:8 and La. R.S. 48:453(E), which included the specific authorization for awards of attorney fees on a percentage basis in La. R.S. 48:453(E), the legislature chose to retain the "reasonable attorney fees actually incurred" language in La. R.S. 13:5111(A) when it amended and reenacted the section. In our view, in addition to the facially apparent differences in the above cited statutes' respective authorizations for awards of attorney fees, the legislature's decision to retain the "reasonable attorney fees actually incurred" language in La. R.S. 13:5111(A) when it amended and reenacted La. R.S. 13:5101-5111 in 1975, after it had added the authorizations for awards of attorney fees in La. R.S. 19:8 and La. R.S. 48:453(E), evidences a clear intent on the part of the legislature to limit awards of attorney fees in appropriation or inverse condemnation suits to, as the statute clearly states, attorney fees "actually incurred."
Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. State, DOTD v. Williamson, 597 So.2d 439, 441-42 (La.1992) and cases cited therein. This court has previously noted that factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. Id. at 442. We have further noted that these factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:
(a) A lawyer's fees shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;

*1162 (4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.[8]
Id. at 442 n. 9.
Turning to the instant case, DOTD notes that despite its suggestion to the trial court on remand that some evidence concerning "reasonable attorney fees actually incurred," in the form of time actually expended by plaintiffs' counsel, be introduced into the record by plaintiffs, no such evidence was presented. While it is apparent from the record that this case was quite complicated, undoubtedly required much time, effort, and skill on the part of plaintiffs' attorney and, even when amended on remand to conform to the decision of the original court of appeal, will result in a very favorable outcome for plaintiff landowners, there is no record evidence to substantiate the amount of time actually expended by plaintiffs' attorney and the trial court erroneously failed to specify an actual dollar amount as an attorney fees award. We therefore reverse the trial court's award of attorney fees and remand the matter to the trial court to determine, after a hearing in which plaintiffs are allowed to introduce evidence as to attorney fees actually incurred, the amount of attorney fees to be awarded, specifying a dollar amount, in accordance with La. R.S. 13:5111 and the factors enunciated herein.[9]

CONCLUSION
The initial court of appeal determination that plaintiff landowners were not entitled to recover for the decrease in value sustained by the lands occupied by the dedicated streets and greenways or for any decrease in the value of the 29 lots not owned by anyone a party to the suit at the time of DOTD's denial of the permit for driveway access was a final judgment in part on the merits. The court of appeal decision effectively decided the merits of plaintiff landowners' entitlement to recover damages for the decrease in value to the dedicated streets and greenways and the lots not owned by anyone party to the instant suit at the time of DOTD's denial of the permit for driveway access. As such, the trial court lacked both the power and the authority to disregard and/or modify the court of appeal's decision. Therefore, there was no basis for the trial court's award on remand of damages for the decrease in value of the dedicated streets and greenways or the 28 lots acquired by Rivet after the date of DOTD's denial of the permit and, further, there was no basis for the court of appeal on appeal after remand to affirm the trial court's amended judgment. We therefore vacate the judgments of the court of appeal on appeal after remand and the trial court's judgment on remand and remand the matter to the trial court to determine the total acreage of the tract, the acreage occupied by the streets and greenways, and the acreage of the 29 lots not owned by anyone party to the suit at the time of DOTD's denial of the permit. Using these figures, the trial court is instructed to calculate the per acre value of the land in the tract on the basis of its original award of $3,099,264.00, then deduct the value of the dedicated streets and greenways and the 29 lots and issue a new judgment accordingly.
The initial court of appeal decision vacating the award of attorney fees and remanding the matter for the trial court to assess and fix attorney fees and expert fees on the revised judgment in accordance with La. R.S. 13:5111 et seq., however, was not a final judgment. The trial court's award on remand of 25% attorney fees, as affirmed by *1163 the court of appeal, is erroneous as it awards attorney fees as a percentage of the judgment and lacks record evidence to support the amount of attorney fees "actually incurred" by plaintiff landowners. However, we find no abuse of discretion in the trial court's award of expert fees in the amount of $15,000.00 for each expert. We therefore vacate the award of attorney fees and remand the matter to the trial court to take additional evidence as to the attorney fees actually incurred and assess and fix attorney fees in accordance with La. R.S. 13:5111 and the factors enunciated herein.
DECREE
VACATED AND REMANDED.
WATSON, J., dissents.
NOTES
[*] Lemmon, J., recused.
[1] While plaintiff landowners' appraisers appear to have based their appraisals of the entire tract on a figure of 110.48 acres as the total land area encompassed by the tract, the only survey contained in the record, that prepared by Russell L. Mistric for DOTD, measures the total land area of the tract as 112.9070 acres. Because the trial court failed to make any factual findings as to the total acreage encompassed by this tract, or as to the acreage occupied by either the dedicated streets and greenways or the 29 lots not owned by anyone party to this suit at the time of DOTD's denial of the permit for driveway access, the actionable "taking," and the experts' figures differ, all acreage figures used herein are approximate.
[2] Because the tract had been classified as "jurisdictional wetlands" by the U.S. Army Corps of Engineers, a Clean Water Act § 404 permit (33 U.S.C. § 1344) was required before any development of the tract could be undertaken.
[3] The interchange at Airline Highway and 1-310 has since been completed.
[4] These 29 lots included the 28 lots acquired by Rivet after DOTD's denial of a permit for driveway access but before the filing of this suit, and one additional lot not owned by Rivet or any of the intervenors either at the time of DOTD's denial of the permit for driveway access or at the time of the filing of this suit.
[5] We note that on remand, the trial court erroneously derived the value of the one lot not owned by anyone party to the suit either at the time of DOTD's denial of the permit or at the time of the filing of the suit by dividing the total damage award by the number of lots in the tract, 390, and deducting the resulting amount from the award. This method is erroneous because it ignores the inclusion in the total damage award of the dedicated streets and greenways, which occupy approximately 21 acres of the tract, and it ignores the fact that the court of appeal had affirmed the trial court's valuation assessment on a per acre basis, such that any deduction made for the lot had to be calculated by determining the acreage occupied by that lot. In this regard, the lots contained in the tract are not of uniform size.
[6] The court of appeal amended the trial court's judgment to set aside that portion of the judgment which ordered deposit of $7,946.83 into the registry of the court, the decrease in value assigned by the trial court to the lot not owned by anyone party to the instant suit either at the time DOTD denied the permit or at the time the suit was filed, and affirmed the trial court's judgment as amended. Rivet II, 95-784 (La.App.12/13/95).
[7] The trial court's original judgment stated:

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff and intervenor landowners and against the State of Louisiana, Department of Transportation and Development, in the full sum of THREE MILLION NINETY-NINE THOUSAND TWO HUNDRED SIXTY FOUR AND NO/100 ($3,099,264.00) DOLLARS, together with legal interest from the date of judicial demand, for attorney's fees in the amount of twenty-five (25) percent, and for all costs which may be legally assessable.
On remand, the trial court deleted $7,946.83 from the damages award, and otherwise reissued the above judgment.
[8] With respect to contingency fee agreements, this court has held that while a court may consider an attorney-client contract among other factors, it is not bound by such an agreement in determining reasonable attorney fees. Moody v. Arabie, 498 So.2d 1081 (La.1986).
[9] After reviewing the testimony and reports of plaintiffs' appraisers, we find no abuse of discretion in the trial court's award of expert fees in the amount of $15,000.00 for each of plaintiff landowners' two expert appraisers.