STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

18-890

STATE OF LOUISIANA AND THE
VERMILION PARISH SCHOOL BOARD

VERSUS

LOUISIANA LAND & EXPLORATION CO., ET AL.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, No. 82162
HONORABLE JEROME M. WINSBERG,
DISTRICT JUDGE AD HOC

************

SYLVIA R. COOKS

JUDGE

************

Court composed of Sylvia R. Cooks, John D. Saunders and Billy H. Ezell, Judges.
**EZELL, J., concurs**.

WRIT GRANTED AND MADE PEREMPTORY; JUDGMENT
RENDERED; REMANDED.

Michael R. Phillips
Claire E.  Juneau
Jeffery J. Gelpi
Kean Miller LLP
909 Poydras Street, Suite 3600
New Orleans, LA  70112
(504) 585-3050


L. Victor Gregoire
400 Convention Street, Suite 700
Baton Rouge, LA  70802

(225) 387-0999

Robert E. Meadows
Carol M. Wood
Andrew M. Stakelum
King & Spalding LLP
100 Louisiana, Suite 4000
Houston, TX  77002
(713) 751-3200
Attorneys for Defendants/Respondents:
  Union Oil Company of California and Chevron U.S.A., Inc.


Donald T. Carmouche
Victor L. Marcello
John H. Carmouche
William R. Coenen, III
Todd J. Wimberly
Ross J. Donnes
D. Adele Owen
Leah C. Poole
Caroline H. Martin
Talbot, Carmouche & Marcello
17405 Perkins Road
Baton Rouge, LA  70810

Jerold Edward Knoll
The Knoll law Firm, L.L.C.
233 South Main Street
Marksville, LA  71351

Grady J. Abraham
Attorney at Law
5040 Ambassador Caffery Pkwy., Suite 200
Lafayette, LA  70502

Kathy Boudreaux
Attorney at Law
P.O. Box 520
Abbeville, LA  70511-0520
Attorneys for Plaintiffs/Applicants:
  Vermilion Parish School Board and the State of Louisiana

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

The State of Louisiana (the State) and the Vermilion Parish School Board (VPSB) sued various defendants including Union Oil Company of California (UNOCAL) seeking remediation of the Sixteenth Section school lands in Vermilion Parish. The land is owned by the State and is managed by VPSB. UNOCAL admitted it was responsible for environmental damage to the property.

In May of 2015, a jury returned a multi-million-dollar verdict awarding damages to the plaintiffs in addition to remediation. In accordance with the 2006 version of La.R.S. 30:29, the matter was referred to the Louisiana Department of Natural Resources, Office of Conservation (LDNR), for a public hearing. LDNR rejected both parties' plans and structured its own plan identified as the LDNR Most Feasible Plan (the Plan), which was subsequently adopted by the trial court. This court affirmed the trial court ruling[1] and the Louisiana Supreme Court denied writs. LDNR noted the parties agreed that the soil and/or sediment around the areas of Tank Battery A and Battery B, and the groundwater are contaminated by exploration and production waste. They disagreed as to the degree of the contamination and the remedy required. The initial cost estimate for the Plan was $1,411,190.00.

The only remaining issues are Plaintiffs' claim for attorney fees and costs. In pursuit of those claims the State and VPSB propounded discovery to UNOCAL and Chevron[2] on August 20, 2018, seeking information concerning the amount of money expended to date by UNOCAL to implement the Plan, the scope of the work performed, and the identity of all persons and contractors associated with

---

[1] *State v. Louisiana Land and Exploration Co.*, 17-830 (La.App. 3 Cir. 3/14/18), 241 So.3d 1258, *writ denied* 18-476 (La. 9/28/18), 252 So.3d 924.

[2] Chevron was dismissed with prejudice from this litigation.

implementing the Plan, along with supporting documents. UNOCAL objected to the interrogatories and request for production of documents asserting they are overly broad, unduly burdensome, and not likely to lead to discoverable information. UNOCAL maintains that because the case is over there should no longer be any discovery in the matter.

The State and VPSB filed a motion to compel which was denied in open court. No written judgment was issued. They timely filed an application for supervisory writs to this court.

## Analysis

Under *Rivet v. State Department of Transportation & Development*, 96-145 (La. 9/5/96), 680 So.2d 1154 (La.1996), three of the important factors in determining the reasonableness of attorney fees are 1) **the ultimate result obtained; 2) the responsibility incurred; and 3) the amount of money involved.**

> **Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law.** *State, DOTD v. Williamson,* 597 So.2d 439, 441-42 (La.1992) and cases cited therein. This court has previously noted that factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) **the ultimate result obtained**; (2) **the responsibility incurred**; (3) the importance of the litigation; (4) **the amount of money involved**; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Id.* at 442.

*Rivet,* 680 So.2d at 1161 (emphasis added).

Additionally, the supreme court in *Rivet* recognized that these factors are actually "derived from Rule 1.5(a) of the Rules of Professional Conduct." *Id.* That rule provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) **the amount involved and the results obtained**;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

State Bar Articles of Incorporation, Art. 16, Rules of Prof.Conduct, Rule 1.5(a) (emphasis added).

It is critical to realize in this case that the final actual cost of remediation is the figure most telling in understanding the "ultimate result obtained" through the fourteen-year efforts of Plaintiffs' attorneys. The original $1.4-million-dollar deposit to cover the cost of remediation under the Plan has already been exhausted and it is apparent much more will be required. The measurement of the real recovery here must include the ultimate cost of remediation in addition to the damage award and statutory attorney fees.[3] The sums being expended on remediation by UNOCAL speak volumes on the issues of "the amount of money involved" in this protracted

_____

[3] La.R.S. 30:29.

3

litigation and also help the courts to understand the "responsibility incurred" by Plaintiffs and their counsel in this litigation.

Defendants assert that under the lodestar approach to determine reasonable attorney fees the cost of remediation is not a factor to be considered and therefore the discovery sought by Plaintiffs would not produce information germane to determining the amount of attorney fees to which Plaintiffs' attorneys are entitled. The jurisprudence does not support this position. "The [United States] Supreme Court has emphasized that the degree of success is the most crucial element in determining a reasonable attorney's fee." *Combs v. City of Huntington, Texas*, 829 F.3d 388, 394 (U.S. 5ᵗʰ Cir. 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983) and *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012 (1985)). In *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on Apr. 20, 2010*, No. 2179, 2016 WL 6215974, at 18, (E.D. La. 2016) the federal court again judged the reasonableness of the attorney fee award using, among other factors, *the results obtained* stating:

> The Supreme Court and the Fifth Circuit have held that the most critical factor in determining the reasonableness of a fee award is the "degree of the success obtained." [In re] *Enron Corp.* [*Sec., Derivative & ERISA Litig.*], 586 F. Supp. 2d [732]at 796-97 [S.D.Tex. 2008] (citing *Farrar v. Hobby*, 506 U.S. 103 (1992); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Success is determined not only by the gross amount of the recovery but also by the number of individuals who benefit from the class settlement, the degree to which it provides them with full compensation for their injuries, and the extent to which the settlement benefits the public at large. *See Vioxx*, 760 F. Supp. 2d at 657-68; *Murphy Oil*, 472 F. Supp. 2d at 866; *In re Diet Drugs*, 553 F. Supp. 2d 442, 472-73 (E.D. Pa. 2008).

The Court in *Deep Water Horizon* further explained that when attorney fees are awarded in addition to damages, the amount of attorney fees ultimately awarded are also a part of the calculation of the *results obtained* because such an award in that instance is also *a part of the total recovery*. In this case Plaintiffs are entitled

by statute to recover attorney fees and costs "in addition to any other amounts to which [a] party may be entitled." La.R.S. 30:29 (E)(1).[4]

> Finally, when, as here, the settlement calls for the defendant to fund the payment of attorneys' fees to class counsel, it relieves the class of the burden of paying those fees from the recovery otherwise available to class members. As such, where a class settlement contains a provision that obliges the defendant to fund the payment of attorneys' fees to class counsel up to a specified amount, that amount is properly included in the value of the settlement for fee award purposes. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal. *Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery*"); [*In re*] *Heartland Payment Sys.*, 851 F.Supp.2d [1040]at 1078-79[,S.D. Tex. 2012].

*Deepwater Horizon*, 2016 WL 6215974 (emphasis added).

The discovery Plaintiffs seek is indeed very relevant to the determination of the reasonableness of the Plaintiffs' attorney fees. This case is no ordinary damages suit. Much of the value of the actual amount recovered for the people of Vermilion Parish and the State is occurring now through remediation and will continue to occur until the remediation is complete. In order to fully establish the reasonableness of the fees they seek to recover, the State and VPSB must be allowed to obtain evidence from UNOCAL that enables it to fully establish the total recovery obtained.

For these reasons we find the trial court erred in denying Plaintiffs' motion to compel discovery. We therefore reverse the trial court's judgment as to UNOCAL and we grant the motion to compel UNOCAL to comply with the State and VPSB's discovery requests forthwith and henceforth.

---

[4] In any civil action in which a party is responsible for damages or payments for the evaluation or remediation of environmental damage, a party providing evidence, in whole or in part, upon which the judgment is based shall be entitled to recover from the party or parties admitting responsibility or the party or parties found legally responsible by the court, in addition to any other amounts to which the party may be entitled, all costs attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage, including, but not limited to, expert witness fees, environmental evaluation, investigation, and testing, the cost of developing a plan of remediation, and reasonable attorney fees incurred in the trial court and the department.

5

We find the trial court's denial of the motion to compel Chevron to respond to discovery is without effect because Chevron was dismissed with prejudice after the jury rendered its verdict, thus the trial court no longer had jurisdiction over Chevron in the absence of the State and VPSB filing an independent action against Chevron or serving a subpoena duces tecum on Chevron. *See* La.Code Civ.P. art. 1463[5] and *Guidry v. State farm Mut. Auto. Ins. Co*., 99-383, p. 5, (La.App. 3 Cir. 12/8/99), 759 So.2d 95, 97-98, wherein we explained:

> The procedure for the production of documents and things in the hands of persons not parties is governed by La.Code Civ.P. art. 1463. The article allows either an independent action, which would necessarily require service, or a subpoena duces tecum to be served upon a person not a party to the lawsuit. . .

> Our discovery rules are based upon the Federal Rules of Civil Procedure, and we can look to that source to help us understand our own rules. *Collins v. Crosby Group, Inc.,* 551 So.2d 42 (La.App. 1 Cir.1989),*writs denied,* 556 So.2d 39, 42 (La.1990). Federal Rule of Civil Procedure 45 governs subpoena practice, and Comment C45–1 to that article explains, in pertinent part, the subpoena as a jurisdiction-getting device.

>> A subpoena, like a summons, is a jurisdiction-getting paper. The summons secures jurisdiction of a defendant in an action, subjecting the defendant to the jurisdiction of the court so that any judgment that may be rendered in the action will bind the defendant. The mission

---

[5]

> A.    Articles 1461 and 1462 do not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land.

> B.    In addition, a party may have a subpoena duces tecum served on a person not a party directing that person to produce documents and things for inspection and copying or to permit entry onto and inspection of land, provided that a reasonably accurate description of the things to be produced, inspected, or copied is given. A reasonable notice of the intended inspection, specifying date, time, and place shall be served on all other parties and shall specify that the other parties may attend and participate in the inspection and copying of the things to be produced. The rules applicable to depositions and subpoenas duces tecum issued and served in connection with depositions shall apply except to the extent inconsistent with this Paragraph.

La.Code Civ.P. art 1463.

6

of the subpoena is to secure jurisdiction of a witness, who
is usually not a party to the action, so as to obtain from the
witness testimony or documents (or other things) needed
by one of the parties.

For the reasons stated we reverse the trial court's judgment as to UNOCAL and we hereby grant the State's and VPSB's motion to compel discovery as to UNOCAL. We remand the case for further proceedings consistent with this opinion. UNOCAL's Motion to Dismiss Application for Supervisory Writ and to Lift Stay are denied as moot. All costs of this writ are assessed against UNOCAL.

**WRIT GRANTED AND MADE PEREMPTORY; JUDGMENT RENDERED; REMANDED**.

7