STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0251

LOUISIANA WETLANDS, LLC and NEW 90, LLC

VERSUS

ENERGEN RESOURCES CORPORATION, CHEVRON USA, INC.,
SOUTHERN NATURAL GAS COMPANY, LLC, EP ENERGY E&P
COMPANY, LP, BRAMMER ENGINEERING, INC., AND BP
AMERICA PRODUCTION COMPANY

Judgment Rendered: DEC 3 0 2024

* * * * * * *

On Appeal from the 16th Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
Trial Court No. 130,527

Honorable Suzanne de Mahy, Judge Presiding

* * * * * * *

| | |
|---|---|
| James R. Swanson<br>Harvey S. Bartlett, III<br>Lance C. McCardle<br>E. Blair Schilling<br>New Orleans, Louisiana | Attorneys for Plaintiff-Appellee,<br>James J. Bailey, III, Individually and<br>as Representative of the Successions<br>of Willie Palfrey Foster and Fairfax<br>Foster Bailey |
| Gladstone N. Jones, III<br>Bernard E. Boudreaux<br>Kevin E. Huddell<br>John T. Arnold<br>Rosa E. Acheson<br>New Orleans, Louisiana | |
| Michael R. Phillips<br>Louis M. Grossman<br>Claire E. Juneau<br>Jeffrey J. Gelpi<br>New Orleans, Louisiana | Attorneys for Defendant-Appellant,<br>Chevron U.S.A. Inc. |

Tracie J. Renfroe (*pro hac vice*)
Elizabeth R. Taber (*pro hac vice*)
Houston, Texas

L. Victor Gregoire
John C. Funderburk
Baton Rouge, Louisiana

Brian D. Melton (*pro hac vice*)
David M. Peterson (*pro hac vice*)
Laranda M. Walker (*pro hac vice*)
Houston, Texas

Richard D. McConnell, Jr.                           Attorneys for Defendant-Appellant,
Alan J. Berteau                                     Southern Natural Gas Company, LLC
Baton Rouge, Louisiana

Tyler Moore Kostal
Claire E. Juneau
New Orleans, Louisiana

\* \* \* \* \* \* \*

**BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.**

**PENZATO, J.**

Chevron U.S.A. Inc. (Chevron) and Southern Natural Gas Company, L.L.C. (SNG) appeal the trial court's July 11, 2023 judgment awarding James J. Bailey, III, individually and as representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey (Bailey), attorneys' fees and costs pursuant to La. R.S. 30:29, sometimes referred to herein as Act 312.[1] For the following reasons, we reverse the trial court's judgment to the extent it awarded Bailey's attorneys hourly rates in excess of those in line with prevailing rates in St. Mary Parish, and/or south Louisiana, for similar services by lawyers of reasonably comparable skill, experience and reputation; and awarded fees and costs incurred after September 24, 2021, the date the Louisiana Department of Natural Resources, Office of Conservation (LDNR),[2] filed its most feasible plan (MFP) in the trial court; and remand this matter in accordance with our instructions.

## FACTS AND PROCEDURAL HISTORY[3]

This case involves oil and gas exploration and production activities conducted on the Bailey family property in St. Mary Parish pursuant to a 1948 mineral lease. In December of 2016, the Bailey family, through their limited liability companies,[4]

---

[1] Louisiana Revised Statutes 30:29 provides the procedure for judicial resolution of claims for environmental damage to ensure that damage to the environment is remediated to a standard that protects the public interest. La. R.S. 30:29(A).

[2] By 2023 La. Acts No. 150, § 5, effective January 10, 2024, La, R.S. 30:29 was amended and reenacted to rename LDNR the "Department of Energy and Natural Resources, office of conservation." We will continue to refer to the department as "LDNR."

[3] Additional facts and procedural history of the underlying oil and gas activities and contamination issues are contained in prior appeals. See Louisiana Wetlands, LLC v. Energen Resources Corporation, 2021-0290 (La. App. 1 Cir. 10/4/21), 330 So. 3d 674, 676-78, writ denied, 2021-01610 (La. 1/12/22), 330 So. 3d 614; Louisiana Wetlands, LLC v. Energen Resources Corporation, 2022-1169 (La. App. 1 Cir. 11/30/23), 380 So. 3d 38, 41-42, writ denied, 2024-00004 (La. 2/27/24), 379 So. 3d 1265; and Louisiana Wetlands, LLC v. Energen Resources Corporation, 2023-0564 (La. App. 1 Cir. 12/11/24), ___ So. 3d ___, ___, 2024 WL 5100161, *1-2 (on reh'g).

[4] The original plaintiffs were Louisiana Wetlands, LLC and New 90, LLC. Through the second supplemental and amending petition, filed in July 2019, Louisiana Wetlands, LLC was removed as party plaintiff, and Bailey was added as a new party plaintiff. In Louisiana Wetlands, 330 So. 3d at 678, all claims of New 90, LLC were dismissed through summary judgment.

3

filed this lawsuit, alleging that testing conducted on the property revealed environmental damage caused by these historical oil and gas operations. In their petition for damages, the Bailey family asserted tort and breach of contract claims against Chevron, SNG, and several other defendants, as the oil and gas lessees who operated at various times throughout the property's history of oil and gas production. The Bailey family sought damages arising from the historical oil and gas operations on their property, alleging environmental damage to their property, and to have their contaminated property cleaned and restored to its original condition.

In August and September of 2020, SNG and Chevron, respectively, filed limited admissions under La. R.S. 30:29. Each admitted it was a "responsible party" for environmental damage on certain areas of the Bailey property. As a result, the trial court referred the matter to LDNR for a determination of the MFP for the evaluation or remediation of the Bailey property to applicable regulatory standards. See La. R.S. 30:29(C)(1). Both Chevron and SNG submitted plans to LDNR. Bailey submitted responses to Chevron's and SNG's plans but did not submit an alternative plan to LDNR.

Following a public hearing in February 2021, LDNR partially accepted the plans submitted by Chevron and SNG, but ultimately structured its own plan, which required further evaluation and testing in some areas of Bailey's property, remediation of soils in some areas, and groundwater monitoring in other areas. On September 24, 2021, LDNR filed its MFP in the trial court in accordance with La. R.S. 30:29. Thereafter, on May 3, 2022, Bailey filed a proposed MFP, authored by ICON Environmental Services, Inc. (ICON).

On July 14-15, 2022, the trial court held a hearing on Chevron and SNG's motion to adopt the "Most Feasible Plan," and on July 15, 2022, issued a judgment adopting LDNR's MFP as the "Most Feasible Plan." In reasons for judgment, the trial court noted that the LDNR MFP was an evaluation plan, which complied with

4

La. R.S. 30:29. The trial court further indicated that the ICON plan submitted by Bailey, which proposed immediate remediation before first completing a full evaluation of environmental damage, was unreasonable, and not feasible. This Court affirmed the trial court's judgment adopting the LDNR MFP. *Louisiana Wetlands, LLC v. Energen Resources Corporation*, 2022-1169 (La. App. 1 Cir. 11/30/23), 380 So. 3d 38, writ denied, 2024-00004 (La. 2/27/24), 379 So. 3d 1265.

On September 8, 2022, the trial court signed a partial final judgment granting a motion to enter a judgment of dismissal filed by Chevron and SNG.[5] The judgment dismissed Bailey's claims against Chevron and SNG, while retaining jurisdiction under R.S. 30:29 to ensure compliance with the MFP adopted by the trial court on July 15, 2022.[6]

Thereafter, in December of 2022, Bailey filed an application for attorneys' fees and costs pursuant to La. R.S. 30:29(E)(1), which authorizes an award of "all costs attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage." In his application, Bailey asserted that he incurred $3,294,566.50 in attorneys' fees and $756,980.43 in costs provided for under La. R.S. 30:29(E)(1) through September 8, 2022.

In response, Chevron and SNG argued that the majority of attorneys' fees and costs claimed by Bailey were not related to the establishment of environmental damage against Chevron and SNG. Chevron and SNG also argued for a reduction of certain attorneys' hourly rates and reductions for the firms' billing techniques. Chevron and SNG calculated the attorneys' fees and costs incurred by Bailey to be no more than $389,032.79 in attorneys' fees and $192,893.04 in costs.

---

[5] The basis for the motion was this Court's reversal of the trial court's denial of Chevron and SNG's motion for summary judgment on prescription as well as a holding by the trial court that a claim for damage caused by unreasonable or excessive operations is a "tort claim."

[6] Bailey appealed the September 8, 2022 judgment; that appeal is currently pending before this Court (2024 CA 0167).

Following an evidentiary hearing and post-hearing briefing on Bailey's application, the trial court issued reasons for judgment and, on July 11, 2023, signed a partial final judgment granting the application with regards to attorneys' fees in the amount of $2,253,465.42 and costs in the amount of $644,916.77.[7] It is from this judgment that Chevron and SNG appeal.

## ASSIGNMENTS OF ERROR

**1. Burden of Proof.** The trial court erred by failing to hold Bailey to his burden of proving the specific fees and costs that are recoverable and reasonable.

**2. Scope of Award.** The trial court erred by failing to limit the award to only those fees and other costs "attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage" under Act 312.

**3. Hourly Rates.** The trial court abused its discretion by awarding fees at hourly rates far above the prevailing market rates in the relevant community.

## STANDARD OF REVIEW

The trial court has much discretion in fixing an award of attorneys' fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. *City of Baton Rouge v. Donahue*, 2023-0319 (La. App. 1 Cir. 12/27/23), 380 So. 3d 666, 673-74.

## LAW AND ANALYSIS

An award of attorneys' fees in this case is authorized by La. R.S. 30:29(E)(1), which provides:

> E. (1) In any civil action in which a party is responsible for damages or payments for the evaluation or remediation of environmental damage, a party providing evidence, in whole or in part, upon which the judgment is based shall be entitled to recover from the party or parties admitting responsibility or the party or parties found legally responsible

---

[7] The trial court issued a written judgment on June 2, 2023 along with its reasons for judgment. Chevron and SNG filed a motion for amendment of the judgment or, alternatively, a limited motion for new trial, alleging an error in the trial court's calculation of the costs, and to designate the judgment as final under La. C.C.P. art. 1915(B). Bailey consented to the granting of Chevron and SNG's motion, and the trial court thereafter rendered the July 11, 2023 judgment.

by the court, in addition to any other amounts to which the party may be entitled, all costs attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage, including, but not limited to, expert witness fees, environmental evaluation, investigation, and testing, the cost of developing a plan of remediation, and reasonable attorney fees incurred in the trial court and the department.

Courts have awarded fees pursuant to this statute in the following two instances.

**Sweet Lake**

In *Sweet Lake Land & Oil Company, LLC v. Oleum Operating Company, L.C.*, 2021-169 (La. App. 3 Cir. 12/1/21), 362 So. 3d 486, <u>writ granted in part and remanded</u>, 2022-00497 (La. 9/20/22), 345 So. 3d 1022, the plaintiff filed suit against British Petroleum corporate entities (BP) and other oilfield operators in connection with decades-long oilfield operations on its property. At a 2015 trial, the jury found BP to be solely responsible for environmental damage on the property. *Id.* at 490. The trial court referred the matter to LDNR for development of an MFP pursuant to La. R.S. 30:29. In October 2016, LDNR issued its MFP; following a hearing, the trial court rejected the LDNR plan as ambiguous. *Id.* at 495. When no MFP had been approved by the trial court by April 2020, the plaintiff filed a motion seeking fees and costs. In a July 28, 2020 judgment, the trial court awarded $5,330,479.11 in attorneys' fees, expert fees, and costs pursuant to La. R.S. 30:29(E). The Third Circuit Court of Appeal affirmed. *Id.* at 514.

BP sought review from the Louisiana Supreme Court, challenging the award insofar as it encompassed fees and costs the plaintiff incurred in pursuing claims for non-regulatory remedies outside of La. R.S. 30:29. The Louisiana Supreme Court granted BP's writ application in part, and remanded the matter to the Third Circuit "to determine what costs and fees were attributable to 'producing that portion of the evidence that directly relates to the establishment of environmental damage.' La.

7

R.S. 30:29(E)." *Sweet Lake Land & Oil Company, LLC v. Oleum Operating Company, L.C.*, 2022-00497 (La. 9/20/22), 345 So. 3d 1022, 1023.

On remand, the Third Circuit concluded the trial court's award to the plaintiff "must be limited to those fees and costs incurred in the trial court and in the LDNR in pursuit of establishing environmental damages and the remediation thereof prescribed by La. R.S. 30:29." *Sweet Lake Land & Oil Company, LLC v. Oleum Operating Company, L.C.*, 2021-169 (La. App. 3 Cir. 12/7/22), 354 So. 3d 740, 745, writ denied, 2023-00034 (La. 3/7/23), 357 So. 3d 349. The Third Circuit therefore reversed in part and amended the trial court's judgment, reducing the overall fees and costs awarded the plaintiff by the amount attributable to the work performed in pursuit of private damage claims.[8] *Id.* The Third Circuit addressed the duration of the recoverable fees and costs, indicating the specific wording of La. R.S. 30:29(E)(1) anticipates a "judgment" as well as either an admission of responsibility or a finding of responsibility by the court. The judgment under review (the July 28, 2020 judgment on the plaintiff's motion to set fees and costs) only resulted after a full jury trial in May 2015. The Third Circuit rejected BP's position that it could not be cast in judgment for attorneys' fees and related costs incurred after the May 2015 trial, reasoning that because proceedings had been ongoing in the LDNR and the trial court had not yet approved an MFP, the trial court correctly included fees and costs through July 28, 2020, the date of the trial court's judgment on the plaintiff's motion to set fees and costs. *Id.* at 747-48.

***Hero Lands***

In *Hero Lands Co., L.L.C. v. Chevron U.S.A. Inc.*, 2022-0383 (La. App. 4 Cir. 5/22/23), 382 So. 3d 271, writ granted in part and remanded, 2023-01050 (La. 10/10/23), 370 So. 3d 1062, and writ denied, 2023-01055 (La. 10/10/23), 371 So. 3d

---

[8] BP conceded the reasonableness of the hourly rates charged by the plaintiff's counsel; thus, that issue was not before the court. *Sweet Lake*, 354 So. 3d at 747.

460, the plaintiff filed suit against Chevron and several other defendants seeking remediation damages for environmental damage to four tracts of land, as provided for by Act 312, as well as private damages outside the scope of Act 312. After more than two years of litigation, Chevron entered a limited admission of liability as to three of the four tracts of land, pursuant to La. R.S. 30:29(C), which was referred to LDNR to develop an MFP for remediation of the environmental damage. On April 7, 2021, LDNR submitted the proposed MFP to the trial court; however, as of the submission of the appeal, the trial court had not approved and adopted an MFP. On April 26, 2021, the case proceeded to a jury trial on the plaintiff's claims for private damages on the three tracts of land to which Chevron admitted liability for environmental damage, and the claims for remediation damages and private damages on the fourth tract of land. The jury rendered a verdict in favor of Chevron, finding no liability for environmental damage on the fourth tract and no liability for the plaintiff's private damages claims on any of the four tracts of land. The plaintiff thereafter filed a motion to fix attorneys' fees and costs pursuant to La. R.S. 30:29(E). *Id.* at 276-77. The trial court ordered Chevron to pay to the plaintiff $3,566,067.70 in attorneys' fees and $744,936.78 in costs. Chevron appealed, alleging the trial court erred in awarding fees and costs incurred by the plaintiff in its unsuccessful pursuit of private damages claims and in pursuit of claims against other defendants. The plaintiff answered the appeal, arguing that the trial court erred by reducing its attorneys' recoverable rates. With regard to the reasonableness of attorneys fees, the trial court had determined that the hourly billing rates of plaintiff's counsel, which ranged from $472.50 to $850.00 per hour, were unreasonable, and reduced them to a range of $400.00 to $525.00 per hour. Upon review, the Fourth Circuit Court of Appeal found no abuse of the trial court's discretion in reducing the rates. *Id.* at 287.

In connection with Chevron's appeal, the Fourth Circuit concluded the trial court erred in awarding fees and costs incurred for prosecution of private claims outside the establishment of environmental damage and statutory remediation damages available under La. R.S. 30:29. *Id.* at 282. With regard to the duration of the award, the Fourth Circuit found that the language of La. R.S. 30:29(E) allows for recovery of costs encompassing all of the work involved in the LDNR proceedings, which all directly relate to the establishment of environmental damage. *Id.* at 283. The Fourth Circuit concluded that the fees and costs incurred by the plaintiff from April 26, 2021, the date that trial began, through May 31, 2021, the last date included in the submitted billing records, must be excluded from the total award. *Id.* at 284.

The Fourth Circuit rejected Chevron's argument that the scope of recoverable fees and costs could not include the plaintiff's pursuit of claims of environmental damage against other defendants. *Id.* at 285. Upon review, the Louisiana Supreme Court found the Fourth Circuit erred in holding that Chevron was responsible for paying attorneys' fees and costs incurred in plaintiff's pursuit of claims against other defendants, and remanded the matter. *Hero Lands Company, L.L.C. v. Chevron U.S.A. Inc.*, 2023-01050 (La. 10/10/23), 370 So. 3d 1062, 1063 (Mem). On remand, the Fourth Circuit found there was insufficient information to accurately distinguish the fees and costs incurred in pursuit of claims against defendants other than Chevron, and remanded the matter to the trial court for an evidentiary hearing to determine as accurately as possible the amount of fees and costs incurred by the plaintiff in pursuit of claims against other defendants. *Hero Lands Company., L.L.C. v. Chevron U.S.A. Inc.*, 2022-0383 (La. App. 4 Cir. 11/9/23), ___ So. 3d ___, ____, 2023 WL 7402414.

**Hearing on Bailey's Application for Fees and Costs**

10

At the hearing on Bailey's application for fees and costs, one of his attorneys, Gladstone Jones, testified that through September 8, 2022, the attorneys in his firm, Jones, Swanson, Huddell & Daschbach, LLC, recorded 5,253.55 hours, which, at the applicable rates for the firm's attorneys, totaled $2,622,260.00 in attorneys' fees. Mr. Jones testified that although he was representing Bailey on a contingency fee basis, he calculated his hourly rate to be $850.00. He conceded that he did not tie his hourly rate to the market rates in St. Mary Parish, had never represented anyone in St. Mary Parish and charged $850.00, nor did he know anybody in St. Mary Parish who charged $850.00 per hour. He acknowledged that in the only other case in which he was awarded attorneys' fees under Act 312, *Hero Lands*, he and his partner Bernard Boudreaux were awarded $525.00 per hour, James Swanson was awarded $500.00 per hour, and other attorneys were awarded rates of $400.00-$425.00 per hour.[9]

Mr. Jones further testified that the costs incurred by Bailey that were billed by his firm for producing the portion of the evidence that directly related to establishment of environmental damage and the costs to develop a plan of remediation amounted to $712,152.89. The billing and cost records were admitted into evidence in connection with Mr. Jones's testimony. Mr. Jones testified that the entirety of the hours performed by his firm were related to the establishment of environmental damage. He further testified that the expert witness fees and other costs incurred all related to environmental damage. Mr. Jones acknowledged that roughly 10% of the billings was spent on issues related to other defendants. He

---

[9] Mr. Jones testified that James Swanson, Emma Daschbach, Kevin Huddell, Harvey Bartlett, John Arnold, and Lindsay Reeves were involved in both *Hero Lands* and the present case. Mr. Swanson's requested hourly rate in this case is $648.18 per hour. Ms. Daschbach and Mr. Huddell's requested rates in this case are $550.00 per hour; in *Hero Lands*, their rates were reduced to $425.00 per hour. Mr. Arnold and Ms. Reeves' requested rates in this case are $475.00 per hour; in *Hero Lands*, their rates were reduced to $400.00 per hour. Mr. Bartlett's requested rate in this case is $384.52 per hour; he received $425.00 per hour in *Hero Lands*.

further testified that $14,733.50 and a travel charge in the amount of $442.56 were mistakenly included in the costs.

E. Blair Schilling testified at the hearing that she was a partner at Fishman Haygood, L.L.P., a law firm also representing Bailey in this litigation. In Ms. Schilling's affidavit offered into evidence at the hearing, she stated that through September 8, 2022, the attorneys in her firm recorded 1,926.8 hours, which, at the applicable rates for the firm's attorneys, totaled $664,581.50 in attorneys' fees. Ms. Schilling testified that two attorneys in her firm did transactional work in St. Mary Parish at a rate of $500.00-$525.00 per hour. She further testified that the costs incurred by Bailey that were billed by her firm for producing the portion of the evidence that directly related to establishment of environmental damage and the costs to develop a plan of remediation amounted to $44,827.54. The billing and cost records were admitted into evidence in connection with Ms. Schilling's testimony. She agreed with Mr. Jones that fees improperly included for another case as well as a 10% reduction for other defendants should be removed from the total. According to Ms. Schilling, most of the work done on the case involved Chevron and SNG because the majority of the contamination was in the areas where they operated. She further testified that the work done after the limited admissions were filed by Chevron and SNG went toward establishing environmental damage.

Bailey also introduced into evidence Chevron's discovery responses showing rates higher than $850.00 charged by several of Chevron's attorneys in this litigation. The trial court noted that those attorneys were from a Houston firm, and although their hourly rate was relevant, the trial court would not necessarily use those rates as comparison for the rates charged by Bailey's attorneys.

In opposition to the testimony and exhibits offered by Bailey, Chevron and SNG offered into evidence the affidavit of Ralph A. Litolff, Jr., a certified public accountant and consultant hired by Chevron and SNG to examine the fee bills for

12

the attorneys representing Bailey in this litigation. As counsel for Chevron and SNG explained at the hearing, they created certain categories for the time entries contained on the time sheets submitted by Bailey's attorneys and assigned the entries to each of the created categories. Based upon the categorization of Bailey's attorneys' fees made by counsel for Chevron and SNG, Mr. Litolff calculated that Bailey incurred $389,032.79 in attorneys' fees and $192,893.04 in costs. The trial court admitted Mr. Litolff's affidavit into evidence, noting, however, that the categories were not substantiated by anything other than Chevron and SNG's argument of how the billing should be separated.

Chevron and SNG also introduced into evidence an invoice from Robert P. Fuhrer, one of Bailey's attorneys who practiced in St. Mary Parish. Mr. Fuhrer charged $300.00 per hour for in-court work and $150.00-$175.00 per hour for out-of-court work for this case.

At the conclusion of the hearing, the trial court indicated there was a line of demarcation after which Bailey's attorneys' work was no longer attributable to producing evidence directly related to the establishment of environmental damage. Based on its interpretation of La. R.S. 30:29, the trial court determined that line was when it adopted the MFP on July 15, 2022. The trial court further advised that with regard to attorneys' fees, in this kind of case, which required specific legal experience, it would look outside of St. Mary Parish to Louisiana as a whole to determine what the industry was charging for this type of litigation. The trial court reduced the $850.00 per hour rates requested by attorneys Jones and Boudreaux to $700.00, while concluding the hourly rates of the other attorneys and staff were reasonable. The trial court provided Bailey the opportunity to revise his application in accordance with these rulings.

According to Bailey's revised application for fees, he incurred $2,493,032.19 in attorneys fees ($801,534.31 less than original request) and $692,715.09

13

($64,265.34 less than original request) in costs for work performed through July 15, 2022 at the revised rates for attorneys Jones and Boudreaux.

In its July 11, 2023 judgment, the trial court reduced the requested fees and costs and awarded $2,253,465.42 in attorneys fees ($239,566.77 less than requested in Bailey's revised application) and $644,916.77 in costs ($47,798.32 less than requested in Bailey's revised application). In its reasons for judgment, the trial court set forth the following reasons why it granted Bailey's request in a reduced amount:

1. At the hearing, Bailey's attorneys conceded that Chevron and SNG could not be held responsible for fees and costs incurred in pursuing claims against other defendants and also testified that their billing entries erroneously included fees and costs from other cases being handled by the law firms. After removing the attorneys' fees and costs that should have been allotted to other defendants and that were erroneously billed, the trial court considered the remainder of the application.

2. After reviewing the factors outlined in *Rivet v. State, Department of Transportation and Development*, 96-0145 (La. 9/5/96), 680 So. 2d 1154, and La. Rule of Professional Conduct 1.5(a),[10] and considering the evidence, the

_____

[10] In *Rivet*, 680 So. 2d at 1161-62, the Louisiana Supreme Court set forth factors to be taken into consideration in determining the reasonableness of attorney fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. The Supreme Court further noted that these factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:

(a) A lawyer's fees shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

14

trial court reduced the hourly rates of attorneys Jones and Boudreaux to $700.00. It further determined the hourly rates of the other attorneys and staff to be reasonable.

3. In reviewing requested costs, the trial court considered that the fees/costs for work done by ICON was not separated by claims against individual defendants. Based on the testimony of Mr. Jones, the trial court determined that at least 10% of the costs associated with "expert fees" of ICON should not be assessed to SNG and Chevron, and reduced the award accordingly.[11]

4. In determining a timeline as to when attorneys' fees and costs could no longer be assessed pursuant to Act 312, the trial court determined that once it adopted the MFP on July 15, 2022, Bailey was no longer incurring costs attributable to producing that portion of the evidence that directly related to the establishment of environmental damage. Although Bailey's evidence presented at the hearing regarding the MFP was not adopted as a portion of the MFP, the trial court found that costs associated with such were attributable to producing evidence related to establishment of environmental damage.

5. The trial court determined that fees and costs incurred with "subsequent purchaser doctrine" issues did not deal with "establishment of

_____

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

[11] In its original June 2, 2023 judgment, the trial court reduced the award for costs in the amount of $1,880. Following Chevron and SNG's motion for amendment of the judgment or, alternatively, limited motion for new trial, the trial court reduced the award by the correct amount.

15

environmental damage," and reduced the attorneys' fees and costs by removing those associated with "subsequent purchaser doctrine" issues.

**Assignments of Error**

### 1. Burden of Proof

In their first assignment of error, Chevron and SNG contend the trial court erred by failing to hold Bailey to his burden of proving the fees and costs that fall within the scope of Act 312, instead placing the burden on them to prove what fees and costs were not recoverable.

As noted above, Bailey produced testimony and supporting documentation regarding the work his attorneys performed to produce the portion of the evidence Bailey contends directly related to the establishment of environmental damage. In opposition, Chevron and SNG provided what the trial court characterized at the hearing as argument (how the billing entries should be separated).

The trial court indicated in its July 11, 2023 judgment that it considered the testimony of Mr. Jones and Ms. Schilling and the evidence presented in issuing its judgment. We find that Bailey submitted evidence to meet his burden of proof.

This assignment of error has no merit.

### 2. Scope of Award.

In their second assignment of error, Chevron and SNG contend the trial court erred by awarding fees and costs beyond the limited scope of La. R.S. 30:29(E)(1). Specifically, Chevron and SNG contend that Bailey cannot recover fees or costs related to his pursuit of claims against other defendants, or related to his claim for "private damages." Chevron and SNG argue that the trial court engaged in no meaningful analysis to determine what portion of Bailey's fees and costs were recoverable and instead, without articulating the basis for its calculation, awarded roughly 91% of the total fees and costs Bailey incurred through July 15, 2022, when the MFP was adopted.

16

**Claims Against Other Defendants**

Chevron and SNG contend that despite Bailey's concession that at least 10% of the fees and costs incurred through July 15, 2022, were related to other defendants, the trial court could not have applied the full 10% reduction because the difference between the trial court' award and the total in Bailey's revised fee application is less than 10%. (Compare $3,185,747.28, the total contained in Bailey's revised fee application, with $2,898,382.19, amount of award, which is approximately 91% of that total.)

In its reasons for judgment, the trial court indicated it reduced Bailey's request by removing erroneous billing entries, and fees and costs incurred in pursuing claims against other defendants and "subsequent purchaser doctrine" issues. The trial court further indicated it reduced the hourly rates of attorneys Jones and Boudreaux. While the trial court did not assign a dollar amount to the reduction, it is evident that the trial court reviewed the evidence presented, and reduced the amount requested by Bailey by approximately 10%. Upon our review of the evidence provided, we cannot conclude that the trial court failed to exclude the work it determined was performed in connection with other defendants.

**Private Damage Claims**

Chevron and SNG next argue that, pursuant to Act 312, the award here must be limited to the fees and costs attributable to producing the evidence that resulted in Chevron's and SNG's limited admissions and Bailey's participation at the LDNR hearing. They contend that Act 312 does not allow recovery of any fees and costs incurred after LDNR files its plan with the trial court and that the costs related to Bailey's attempt at the MFP hearing before the trial court to prove the ICON plan was more feasible than LDNR's plan are not recoverable because that attempt failed.

Bailey argues on appeal that while private damage claims must be segregated from those that are directly related to the establishment of environmental damage

17

under La. R.S. 30:29(E), how the trial court engages in that segregation is a fact issue subject only to manifest error/abuse of discretion review. Bailey argues that the trial court's method for making this segregation – a "line of demarcation" recognizing when the Act 312 part of the proceedings that had been intertwined with the "private damages" claims had come to at least a momentary conclusion – cannot be an abuse of this discretion where it is supported by testimony in the record and is cohesive with similar approaches to the substantive overlap of these claims in *Sweet Lake* and *Hero Lands*.

As noted above, the trial court rejected Chevron and SNG's argument that all work performed by Bailey's attorneys after LDNR filed its plan with the trial court was in pursuit of private damage claims. Rather, the trial court reasoned that, based upon the language of La. R.S. 30:29(E), Bailey was allowed to recover fees and costs incurred to prepare for the MFP hearing before the trial court, including the costs associated with presenting the ICON plan, even though the trial court did not adopt any of that plan.

As the trial court recognized at the hearing on Bailey's application for fees and costs, this case is distinguishable from *Sweet Lake* and *Hero Lands* because in neither of those cases had the MFP been adopted "ahead of time." In *Sweet Lake*, the Third Circuit allowed fees and costs through the date of the trial court's judgment on the plaintiff's motion to set fees and costs. The Third Circuit found that La. R.S. 30:29(E) anticipates a "judgment" as well as either an admission of responsibility or a finding of responsibility by the court. *Sweet Lake*, 354 So. 3d at 747. However, the Third Circuit did not cut off the attorneys' fees and costs at the time of the 2015 trial at which the jury found BP responsible for environmental damage on the property. Rather, the Third Circuit found that the record in that case reflected that

18

proceedings were ongoing in the LDNR and the trial court had not yet approved an MFP.[12] *Id.* at 748.

In *Hero Lands*, the Fourth Circuit concluded that the language of La. R.S. 30:29(E) allows for recovery of costs encompassing all of the work involved in the LDNR proceedings. *Hero Lands*, 382 So. 3d at 283. In *Hero Lands*, LDNR filed its MFP on April 7, 2021, and trial began on April 26, 2021 on the plaintiff's claims for private damages on the three tracts of land to which Chevron admitted liability for environmental damage, and the claims for remediation damages and private damages on the fourth tract of land, which trial resulted in a verdict in favor of Chevron. In considering the record in that case, specifically with an eye toward determining the costs and fees attributable to the work performed by Hero in "producing that portion of the evidence that directly relates to the establishment of environmental damage" in both the trial court and the LDNR proceedings, the Fourth Circuit concluded that the fees and costs incurred by Hero from April 26, 2021, the date that trial began, through May 31, 2021, the last date included in the submitted billing records, must be excluded from the total award. *Id.* at 284.

While we agree with the Third Circuit in *Sweet Lake*, 354 So. 3d at 747, that La. R.S. 30:29(E) anticipates a "judgment" as well as either an admission of responsibility or a finding of responsibility by the court, we note that La. R.S. 30:29(E)(1) only allows recovery of the costs of producing that portion of the evidence directly relating to the establishment of environmental damage **upon which the judgment is based**. As noted above, the trial court indicated it did not adopt any of the plan submitted by Bailey at the hearing that resulted in the MFP.

---

[12] Unlike in the present case, in *Sweet Lake Land & Oil Company, LLC v. Oleum Operating Company, L.C.*, 2017-464 (La. App. 3 Cir. 10/18/17), 229 So. 3d 993, 1002, the trial court had refused to adopt the MFP proposed by LDNR, which did not include a plan for groundwater or flowline remediation, but, rather, consisted of further testing by BP, finding the plan was incomplete. The Third Circuit found no error in the trial court's failure to approve the plan. See also *Louisiana Wetlands*, 380 So. 3d at 43 n.7.

Thus, Bailey did not produce any evidence at the July 14-15, 2022 hearing upon which the judgment was based. Rather, at the time LDNR filed its MFP in the trial court on September 24, 2021, the evidence relating to the establishment of environmental damage upon which the judgment was based had been produced. Thus, we find the trial court erred in awarding fees and costs from September 24, 2021 through July 15, 2022. We find the posture of this case to be more similar to that presented in *Hero Lands*, and find the date of September 24, 2021 to be consistent with the duration of the award in that case. See *Hero Lands*, 382 So. 3d at 283.

### 3. Hourly Rates.

Finally, in their third assignment of error, Chevron and SNG contend the trial court abused its discretion by awarding fees at hourly rates far above the prevailing market rates in the area, despite Bailey offering no evidence to prove those rates were reasonable.

In reviewing a trial court's determination of a reasonable hourly rate, the Louisiana Supreme Court stated as follows:

> A reasonable hourly rate is to be determined "according to the prevailing market rates in the relevant community" for attorneys of similar experience in similar cases. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) .... "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541. A rate determined in this way is normally deemed to be reasonable, and is considered to be "the prevailing market rate." *Id.* To be sure, an award of attorney fees should be high enough to "facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir.2011). We reiterate that, in determining the amount of reasonable attorney fees to award under federal fee shifting statutes, the district court is afforded considerable discretion. *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

*Covington v. McNeese State University*, 2012-2182 (La. 5/7/13), 118 So. 3d 343, 350.

Upon review of the record, we find the trial court failed to properly consider whether the hourly rates requested by Bailey's attorneys were in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. The only evidence presented of market rates in St. Mary Parish was the testimony of Ms. Schilling that attorneys in her firm charged $500.00-$525.00 per hour for transactional work and the billing records of Mr. Fuhrer showing hourly rates of $150.00-$300.00. Additional evidence was presented regarding the hourly rates awarded in *Hero Lands*, which was heard in the 25th Judicial District Court in Plaquemines Parish, a community similar to St. Mary Parish. The record contains no evidence that hourly rates of $700.00 are in line with those prevailing in south Louisiana for similar services by lawyers of reasonably comparable skill, experience and reputation. Thus, we find the trial court abused its discretion in awarding attorneys Jones and Boudreaux $700.00 per hour.

Based upon the evidence in the record, we find that the maximum reasonable hourly rate for this case is $525.00. We therefore reduce the hourly rate of attorneys Jones and Boudreaux to $525.00. We further find the trial court erred in failing to consider the rates of those attorneys with hourly rates over $400.00. However, there is insufficient evidence in the record for us to set reasonable hourly rates for these attorneys. We therefore remand this matter to the trial court for it to set reasonable hourly rates for those attorneys upon consideration of the relevant market, namely the 16th Judicial District Court in St. Mary Parish, and/or south Louisiana.

In addition, because we are unable to determine the applicable hourly rates for Bailey's attorneys, we are unable to reduce the award in accordance with our finding that the fees and costs incurred by Bailey from September 24, 2021, the date LDNR

21

filed its MFP, through July 15, 2022, the date the trial court adopted LDNR's MFP, must be excluded from the total award.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's July 11, 2023 judgment to the extent it awarded Bailey's attorneys hourly rates in excess of those in line with prevailing rates in St. Mary Parish, and/or south Louisiana, for similar services by lawyers of reasonably comparable skill, experience and reputation; and awarded fees and costs incurred after September 24, 2021. We remand this matter to the trial court to: (1) set hourly rates for those attorneys with requested hourly rates over $400.00 that are in line with those prevailing in St. Mary Parish, and/or south Louisiana, for similar services by lawyers of reasonably comparable skill, experience and reputation; and (2) thereafter calculate the amount of attorneys' fees, based on those rates, and the rate of $525.00 per hour for attorneys Gladstone Jones and Bernard Boudreaux, through September 24, 2021; and (3) reduce the award of costs to remove those incurred after September 24, 2021.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0251

LOUISIANA WETLANDS, LLC and NEW 90, LLC

VERSUS

ENERGEN RESOURCES CORPORATION, CHEVRON USA, INC.,
SOUTHERN NATURAL GAS COMPANY, LLC, EP ENERGY E&P
COMPANY, LP, BRAMMER ENGINEERING, INC., AND BP
AMERICA PRODUCTION COMPANY

 **STROMBERG, J.,** concurring in part. I respectfully concur as to that part of the

majority's opinion reversing the trial court's award of attorneys' fees based on

hourly rates in excess of the prevailing rates in St. Mary Parish and/or south

Louisiana for similar services by lawyers of reasonably comparable skill,

experience, and reputation. Based on the evidence presented in this case, I concur

with the majority's reversal of the attorneys' fee awards. However, under different

circumstances, a higher award of attorneys' fees would not be precluded. In

handling specialized oilfield legacy cases, for effective representation in such

complex cases, plaintiffs may seek attorneys with expertise and specific experience

who may not be available in their geographic area.